## Middleton, et al. v. Ball, et al.

(Decided November 22, 1918.)

### Appeal from Harlan Circuit Court.

1. Deeds—Delivery—Recording—Presumption.—The fact that a deed is on record is prima facie evidence of delivery and whoever asserts the contrary has the burden of proving it.

2. Deeds—Delivery—Recording—Presumption—Non-Delivery —Sufficiency of Evidence.—To overcome the presumption of delivery arising from the fact that the deed was on record for twenty-seven years during the lifetime of the grantor and that he, although knowing that the deed had been put to record, instituted no proceedings during that time to set the deed aside, the proof should be clear and persuasive, and declarations of the grantor, made several years after the deed was recorded, to the effect that the deed had been stolen from him and put to record, and that he intended to have it taken off the record were not sufficient.

3. Deeds—Mental Incapacity—Undue Influence—Fraud—Evidence—Sufficiency.—In an action attacking a deed on the grounds of mental incapacity, undue influence and fraud, evidence examined and held insufficient to sustain any one of these grounds.

G. A. EVERSOLE and ROSE & HUFF for appellants.

W. F. HALL and HALL & JONES for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

By deed dated July 5, 1887, and recorded March 7, 1888, George Stewart, for the recited consideration of $250.00 cash, sold and conveyed to his two sons, Wilson Stewart and William Stewart, a tract of land in Harlan county consisting of about 550 acres, the deed providing that "George Stewart is to have the use and benefit and possession of the foregoing boundary of land during his natural life, and at his death the land is to be Wilson and William Stewarts'." Prior thereto, George Stewart had sold all the mineral underlying the land so that only the surface right to the land passed by the conveyance in question. After the execution of this deed, the grantor continued to live on the land and use it for farming purposes until a short time before his death, which occurred in the month of June, 1915. His two sons, Wilson and William, each built a residence on the land and occupied the land jointly with their father. Prior to the death of William Stewart, which occurred about the year

1898, he and his brother Wilson agreed on a division of the land. After the death of William Stewart, Wilson Stewart brought a suit against his brother's heirs and obtained a judgment fixing the division line in accordance with agreement theretofore made. William Stewart was survived by five children. Henry Turner purchased the interests of all the children except Myrtle Ball. Wilson Stewart, Jr., son of William Stewart, and one of Henry Turner's vendors, attempted to set aside the deed which he had made on the ground of infancy, but the case was decided in favor of Henry Turner. Pending that suit, George Stewart and Wilson Stewart, Jr., son of William Stewart, conveyed to Rhoda Middleton, a daughter of George Stewart, 50 acres of land embraced in that portion of the 550 acre tract partitioned to William Stewart's heirs.

Alleging that they were the owners of the 50 acre tract held by Rhoda Middleton, Henry Turner and Myrtle Ball brought this suit against Rhoda Middleton and others to enjoin them from cutting and removing the timber and to recover damages for the value of the timber theretofore removed. The defendants attacked the deed from George Stewart to William and Wilson Stewart on the ground that it was never delivered and on the further grounds that George Stewart was mentally incapable of making the deed and that the deed was obtained by fraud and undue influence. During the progress of the action, Polly Middleton and others, children and grandchildren of George Stewart, intervened and after attacking the deed upon the same grounds asserted a joint interest in the property. On final hearing, plaintiffs were granted the relief prayed for and the petition of Polly Middleton and others was dismissed. From that judgment this appeal is prosecuted.

As George Stewart, father of Rhoda Middleton, had conveyed the entire 550 acre tract, embracing the 50 acres in controversy to his two sons, William and Wilson, subject to a life estate therein, many years before he conveyed the 50 acres to Rhoda Middleton, it is manifest that Rhoda acquired by that deed no interest in the tract in controversy except an estate during George Stewart's life; nor did she acquire any interest therein by the deed from Wilson Stewart, Jr., for prior thereto Wilson Stewart, Jr., had sold and conveyed all his interest in the property. That being true, the question

whether she and the other appellants have an interest in the 50 acre tract in controversy turns on the validity of the deed executed by George Stewart to his two sons, William and Wilson.

The first question to be determined is whether the deed was ever delivered. The only evidence tending to show that the deed was not delivered is some alleged declarations of George Stewart to the effect that the deed had been stolen from him and put to record, and that he intended to have it taken off the record, which declarations were made several years after the deed had been recorded. Here the deed was signed and acknowledged on July 5, 1887, and put to record on March 7, 1888. The fact that a deed is on record is *prima facie* evidence of delivery, and whoever asserts the contrary has the burden of proving it. 8 R. C. L., sec. 66, p. 1004. Here the deed was on record for twenty-seven years while the grantor was alive. During that time he instituted no proceedings to set the deed aside although he knew that the deed had been put to record. To overcome the presumption of delivery arising from these circumstances, the proof should be clear and persuasive. The declarations of the grantor above referred to, though not objected to, do not come up to the required standard and are therefore not sufficient to show that the deed was not delivered.

While an attempt was made to show that George Stewart was drunk when he signed the deed, the evidence did not go further than to show that he sometimes drank to excess. On the other hand, the county clerk, who took the acknowledgment, testified that George Stewart was sober.

On the question of undue influence, the decided weight of the testimony is that George Stewart was a man of good mind and strong character. While much stress is put on the fact that his sons only paid $250.00 for the land, it must be remembered that George Stewart had purchased the entire tract, including the minerals thereon, for $1,200.00, and had disposed of the minerals before he sold the land to his sons. When he sold the land to his sons he conveyed only the surface rights and reserved therein a life estate for himself. There is no reliable evidence in the record sufficient to show that the surface right to the land, after the termination of the grantor's life estate therein, was then worth more than the pur-

chase price paid. On the whole, we conclude that the evidence is insufficient to show mental incapacity on the part of the grantor or that he was the victim of undue influence or fraud on the part of the grantees.

Judgment affirmed.